IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| MONTGOMERY CARL AKERS,<br><br>Plaintiff,<br><br>vs.<br><br>J. CONOVER et al.,<br><br>Defendants. | CV 21-0066-BU-BMM<br><br><br>ORDER |

Plaintiff Montgomery Akers originally filed this suit in Montana state court on May 11, 2021, alleging tortious interference with a business contract and other claims. (Doc. 1-1.) Defendants removed the matter to this Court and filed a motion to dismiss. (Doc. 3.) Akers has subsequently moved to amend his Complaint and has lodged two amended Complaints, in which he makes additional allegations against new defendants. (Docs. 11, 11-1 and 12.) Defendants oppose amendment. The motion to amend will be granted, but because Akers' Second Amended Complaint fails to state a claim upon which relief can be granted, the case will be dismissed with prejudice.

## I.      BACKGROUND

Akers is a federal prisoner incarcerated in Marion, Illinois, proceeding pro se. Akers alleges in his first Complaint, filed in state court, that the three

defendants conspired to interfere with his relationship with Gilberto Torres of Texas, who was acting as a private investigator in support of Akers's claims in another case he had pending before this Court. (Doc. 1-1 at 2.) Akers asserts that on August 15, 2020, Defendants improperly blocked his contact with Torrez in order to prevent Torrez from "perform[ing] routine service upon the defendants . . ." (Doc. 1-1 at 3.) Akers then contends that Defendants again conspired to block his contact with a Utah attorney, Julie George, and her investigator. *Id.* Finally, Akers contends that Defendants blocked his communication with Evolution Process Serving, Indianapolis, Indiana, with the purpose of obstructing justice. *Id.*

Akers's first proposed Amended Complaint, filed October 1, 2021, adds allegations that Defendants' supposed actions were motivated by religious animus, in violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq. (Doc. 11-1 at 2 -3.) Akers adds a conclusory jurisdictional allegation, that Defendants actions were taken in violation of RFRA. (Doc. 11-1 at 1.) RFRA is not mentioned in the original Complaint. Second, Akers amends his venue allegation to claim venue is proper in this Court, rather than Gallatin County state court. The factual allegations of the Amended Complaint that follow are then, in general, identical to the allegations of the original state court complaint, except that Akers elaborates the method by which Defendants allegedly interfered with his contact with certain third parties (Doc. 11-1 at 3 - 4), and makes a blanket assertion

that Defendants acted pursuant to "their "Jewish ideology" in hating Christians." (Doc. 11 -1 at 3.) Akers suggests, but does not make explicit, that one of the third parties involved contacted Akers because of his Christianity, and, impliedly, contact with her was discontinued for that reason. This third party, Jo Anne Smith, is mentioned for the first time in the First Amended Complaint.

Akers filed another document a few days later, entitled "Revised Amended Complaint for Damages." (Doc. 12.) This document reads almost verbatim with the First Amended Complaint, other than the names Randy J. Tanner and Victoria L. Francis are literally squeezed into the first allegation of conspiracy regarding Gilberto Torrez. (Doc. 12 at 2.) The biggest differences between the First and Second Amended Complaints, besides the addition of these defendants, are the changes to the allegations regarding the third party, Smith. Akers now alleges that Tanner, Francis, and the Defendants conspired to create a fictious person, Jo Anne Smith, with the intent of causing Akers emotional harm by having her then abruptly cease contact with him. (Doc. 12 at 5.) This allegation changes Akers's RFRA claim, since in the earlier Amended Complaint, Akers asserts that the alleged wrong was breaking of contact with a fellow Christian. In the proposed amendment, the woman is not, in fact, a fellow Christian, but rather a fiction created by the Assistant United States Attorneys in this matter in order to interfere with Akers's mental health and ongoing litigation. (Doc. 12 at 5.)

## II.    MOTION TO AMEND

Fed. R. Civ. P. 15(a)(1)(B) allows amendment once as a matter of course within 21 days of the filing of a responsive pleading. Otherwise, amendment is allowed only with the opposing party's consent or leave of court, which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Defendants have opposed Aker's motion to amend. (Doc. 13.) Akers moved to file his amendment when, by the date of his signature on the motion, he did not need to file a motion. (Doc. 11, signed September 22, 2021, 21 days after Defendants filed their motion to dismiss.) Akers did not move to file his second amendment, however, when, by rule, he needed to file a motion for leave of Court. (Doc. 12, signed September 25, 2021.)

The Court will allow the first amendment as an amendment as a matter of course. Over Defendants' objections, it will also allow the second, which becomes the operative Complaint, and the original Complaint no longer serves a function in the case. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).   Defendants are not prejudiced by this filing, as the following analysis demonstrates.

## III.    SCREENING STANDARD

Because Akers is a prisoner proceeding pro se in a suit against the government or governmental employees, the Court must initially screen his Complaint under 28 U.S.C. § 1915A. Sections 1915A(b) and 1915(e)(2)(B) require

the Court to dismiss a complaint filed by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled

to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim.  *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry involves "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id. citing* Fed. R. Civ. P. 8(a)(2).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

"The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.' " *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

## IV.   SCREENING ANALYSIS

Based on its screening, the Court determines that Akers's Second Amended Complaint fails to state a plausible claim for relief for the following reasons.

### A. RFRA Claim

The Court turns first to Akers's only true federal law claim: his allegation that the various defendants violated his rights under the Religious Freedom Restoration Act ("RFRA"). Though parts of RFRA were declared unconstitutional as applied to the states, the U.S. Supreme Court has stated that RFRA "continues to apply to the Federal Government." *Sossamon v. Texas*, 563 U.S. 277, 281 (2011) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005)). Additionally, the Ninth Circuit has held that the RFRA remains operative "as applied in the federal realm." *Guam v. Guerrero*, 290 F.3d 1210, 1221 (9th Cir. 2002).

To state a prima facie claim under RFRA, a plaintiff must "present evidence sufficient to allow a trier of fact rationally to find the existence of two elements." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir. 2008) (en banc). "First, the activities the plaintiff claims are burdened by the government action

must be an 'exercise of religion.' " *Id*. "Second, the government action must 'substantially burden' the plaintiff's exercise of religion." *Id*.

"Under RFRA, a 'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit . . . or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions . . .." *Id.* at 1069–70; *see also Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016). Any effect on an individual's "subjective, emotional religious experience" does not constitute a substantial burden. *Navajo Nation*, 535 F.3d at 1070. Likewise, "a government action that decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion" does not constitute a substantial burden." *Id.* at 1063.  *See also Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1061 (9th Cir. 2020), *cert. granted*, 141 S. Ct. 2720 (2021).

The allegations in Akers's Second Amended Complaint that could be remotely construed as relating to his religious practice are his assertion that the Defendants are motivated by an ideology of hating Christians such as Akers (Doc. 12 at 3), and that Defendants interfered with his pen-pal relationship with a woman, Jo Anne Smith, who identified herself as a Christian. (*Id.* at 4.) Akers then asserts that Smith is in fact a "fictitious entity," created as part of Defendants'

"nefarious machinations." (Doc. 12 at 5.) This assertion complicates the issue of whether Jo Anne Smith has any religious implications whatsoever.

These allegations do not begin to carry the weight Akers needs in order to plausibly state a RFRA claim. Any of the several allegations regarding Defendants' conspiracy related to interfering with any of the individuals named in the original complaint—Torrez, George, Fowers, and Evolution Process Serving— are not allegations that relate to his practice of religion. He expressly states that these Defendants interfered with his "business relations" and his ability to litigate. (Doc. 12 at 2 – 3.) Though he makes a conclusory allegation that Defendants' actions are motivated by religious animus, to state a RFRA claim he must allege that his own religious practice has been burdened. Akers fails to do so.

Akers's new allegations, regarding interference with Jo Anne Smith, likewise say nothing about Akers's exercise of his religion. At most, he refers to her being a Christian, but that says nothing about his own religious practice. (Doc. 12 at 4.) Presumably there is more to his religious practice than exchanging letters with this one new acquaintance. The scenario is complicated by the Second Amended Complaint, in which he suddenly alleges that Smith is not a real person. It is especially unclear how a fake person could burden his exercise of religion.

Akers's RFRA claims do not even get out of the gate, and he has entirely failed to allege any facts that would state a claim. Given that he has had three

attempts now to state a RFRA claim, and his allegations do not even gesture at a valid claim, the Court concludes that further amendment would be futile. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (explaining that "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" (citation and internal quotation marks omitted)). The claim will be dismissed.

## B. State Tort Claims

The gravamen of Akers's original complaint and the claims that have carried over into his Second Amended Complaint are state law claims—tortious interference with business relations, defamation, and perhaps some form of intentional infliction of emotional distress. The claims should be dismissed for two reasons.

### 1. Lack of Subject Matter Jurisdiction

This Court lacks subject matter jurisdiction over Akers's claim because he alleges only state law tort claims that can be heard only against the United States itself as the defendant under the Federal Tort Claims Act ("FTCA"). (Doc. 4 at 6, citing 28 U.S.C. § 2679(b)(1).) Under the Westfall Act (formally known as the Federal Employees Liability Reform and Tort Compensation Act of 1988), federal employees have absolute immunity from tort claims arising out of their conduct in the official duties. *Osborn v. Haley*, 549 U.S. 225, 229 (2007). If the United States

Attorney General certifies that a federal employee was acting within the scope of his or her employment at the time of the alleged tortious incident, the suit is converted into an action against the United States under the FTCA. The Attorney General's certification "conclusively establish[es] scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d)(2). *Osborn*, 549 U.S. at 231.

In this instance, Acting U.S. Attorney Leif Johnson, pursuant to the authority vested in him by the Attorney General, has certified that Defendants Conover, Siereveld, and Sproul were acting within the scope of their employment with BOP at all times related to this litigation. (Doc. 4-4.) This certification means that the United States should be substituted as defendant in this action.[1] As a prerequisite to suit under the FTCA, however, a claimant must first exhaust administrative remedies.  The FTCA provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . ., unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  The FTCA requires "complete exhaustion of administrative remedies before invocation of the judicial process."  *McNeil v. United States*, 508 U.S. 106, 112 (1993). Akers has failed to submit his claim pursuant to the FTCA or

---

[1] This leaves aside for the moment Defendants Tanner and Francis, who are also federal employee defendants. Their situation will be discussed below.

exhausted his administrative remedies. This Court lacks subject matter jurisdiction and the claims must be dismissed.

### 2. Supplemental Jurisdiction

Setting aside the issues with the lack of subject matter jurisdiction due to the FTCA, in the alternative, since the Court has found no independent cause of action under federal law, it declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367.

### C. Individual Defendants

### 1. Conover, Siereveld, and Sproul

This Court previously determined that it lacked personal jurisdiction over Defendants Conover and Siereveld. *See Akers v. Conover et al.*, CV 20-64-BU-BMM, Order, October 20, 2021. Akers's Second Amended Complaint does nothing more allege facts that would bestow the Court with personal jurisdiction over these defendants, or over Defendant Daniel Sproul.

In determining whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits when there is no applicable federal statute governing the issue. *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.1998). Courts in Montana use a two-step test to determine whether a Montana court may exercise

personal jurisdiction over a nonresident defendant. *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 18, 378 Mont. 75, 80, 342 P.3d 13, 17.

Personal jurisdiction may exist under Mont. R. Civ. P. 4(b)(1) if a party may be "found within the state of Montana" and subject to general jurisdiction. Mont. Code Ann. § 25-20-II. To be "found" within Montana for general jurisdiction purposes, a person must be either physically present, or "it is necessary that the defendants' activities [in Montana] are 'substantial' or 'systematic and continuous.'" *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 19, 378 Mont. 75, 80–81, 342 P.3d 13, 17 (2015) (internal citations omitted.)

In the alternative, if the claim for relief arises from any of the acts listed in Mont. R. Civ. P. 4(b)(1)(A-G), it may support specific jurisdiction for the purpose of litigating that particular claim. These acts include transaction of business, commission of an act that results in accrual within Montana of a tort action, ownership of property in Montana, contract of insurance in Montana, or acting as an officer in a Montana corporation or a personal representative of a Montana estate.

If personal jurisdiction appears to exist, the Court must determine whether the exercise of personal jurisdiction conforms with "the traditional notions of fair play and substantial justice embodied in the due process clause" of the United States Constitution. *Milky Whey, Inc.*, 378 Mont. 75 at 80 (citations omitted.) The

Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident defendant to a judgment of its courts. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291(1980).) The Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted).

The Ninth Circuit Court has held that a court may exercise specific personal jurisdiction over a nonresident defendant under the following circumstances:

> (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiffs claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir.2004). The plaintiff bears the burden of establishing the first two prongs of this test. *Id.* Failure to do so means no personal jurisdiction exists in the forum state. If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

In *Walden v. Fiore*, the U.S. Supreme Court emphasized a few aspects of this due process analysis. "First, the relationship must arise out of contacts that the

'defendant *himself*' creates with the forum State." A plaintiff's convenience or

interest is not sufficient. Second, "minimum contacts analysis" looks to "the

defendant's contacts with the forum State itself, not the defendant's contacts with

persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Though the plaintiff bears the burden of establishing personal jurisdiction,

he needs only to make a prima facie case of jurisdictional facts. *Dole Food Co. v.

Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). Any uncontroverted allegations in the

complaint must be taken as true. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d

784, 787 (9th Cir. 1977); *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d

586, 588 (9th Cir. 1996).

The sole factual allegation regarding jurisdiction in Akers's Second

Amended Complaint is a blanket assertion that jurisdiction is proper in Montana

because "the acts and actions of the defendants [. . .] took place in the State of

Montana." (Doc. 12 at 1.) Akers then describes various actions of Defendants that

he claims were directed at him (who is himself not found in Montana). No factual

allegations appear in the Second Amended Complaint that support the conclusion

that Conover, Siereveld, and Sproul can be found in Montana, either physically or

judicially, for the purposes of this Court exercising personal jurisdiction over them.

Similarly, none of the individuals with whom Defendants allegedly interfered can

be found in Montana, giving rise to the possibility that a tort was committed in

Montana. No factual allegations exist against these Defendants that relate to conduct or presence in Montana.[2]

As to specific jurisdiction, no factual allegations exist to support its application in this matter. Of the acts enumerated in Montana's Rule 4(b)(1), the only one that could conceivably apply, based on the allegations of Akers's Second Amended Complaint, is "the commission of any act resulting in accrual within Montana of a tort action," assuming Akers could establish that Defendants committed a tort in Montana. Mont. R. Proc. 4(b)(1)(B). The Montana Supreme Court discussed this provision in *Tackett v. Duncan*, 334 P.3d 920 (Mont. 2014), and reviewed what it means for a cause of action to "accrue" in Montana. The Montana Supreme Court emphasized that "specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation,[. . .] , and depends on whether the defendant's "suit-related conduct" created a substantial connection with the forum state. *Tackett*, 334 P.3d at 925 (internal quotations and citations omitted). The Montana Supreme Court "focused on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Id.*, at 358; *see also Bi–Lo Foods, Inc. v. Alpine Bank,*

---

[2] The Court takes judicial notice of the Declarations of Conover and Siereveld filed in *Akers I*: (Docs. 22, 22-1 and 22-2.) The declarations establish that neither Defendant has ever traveled to Montana, and has had contact with anyone in Montana related to her work activities. (Docs. 22-1 at 2 and 22-2 at 3.)

*Clifton,* 955 P.2d 154, 157–59 (Mont. 1998) (that the defendant allegedly took actions that were calculated to have an effect in Montana and caused an injury to a Montana resident in Montana does not establish accrual of an action in Montana).

Taking Akers's allegations in his Second Amended Complaint as true, whatever these Defendants did, they did where they live and work, by communicating within their work context. None of these acts touched Montana and they do not give rise to specific personal jurisdiction.

This Court lacks personal jurisdiction over Conover, Siereveld, and Sproul. As such, the claims against them will be dismissed.

### 2.  Tanner and Francis

The Court is not convinced that the addition of Tanner and Francis occurred without ulterior motive. Their initial insertion into the Second Amended Complaint reflects their status as an afterthought, as the text of the claim reads identical to the text in Akers's First Amended Complaint, with the exception that the names of these two were added in smaller font in order to make them fit in the space left in the first version. *Compare* Doc. 11-1 at 2 with Doc. 12 at 2. Akers states no facts about what Tanner and Francis allegedly did related to interference with Akers's business relations. Akers merely states they joined in with what he already alleged everyone else had done.

Akers's only allegations against Tanner and Francis that has any content is again a bare allegation of conspiracy, and a modification of this same claim against the other defendants from the First Amended Complaint:

> [...] RANDY J. TANNER and VICTORIA L. FRANCIS, have conspired with the defendants, and each of them, to enlist the cooperation of this supposed JO ANNE SMITH who, at this time, cannot be corroborated as a real person. Plaintiff-Akers has discovered that the defendants RANDY J. TANNER and VICTORIA L. FRANCIS have advised, agreed, confederated, with defendants CONOVER and SIEREVELD to fabricate this JO ANNE SMITH, purportedly from San Antonio, Texas, to contact Plaintiff-Akers in an effort to create psychological and emotional distress upon Akers.

(Doc. 12 at 4.) These allegations, though sparse and failing to truly allege any actions by Tanner and Francis, at most would state a claim for a state law tort. The Court concludes that these facts do not state a claim, failing to plausibly identify exactly what Tanner and Francis did; if they did anything, based on these allegations, it would be a state law claim that is subject to the subject matter and supplemental jurisdiction infirmities outlined above. The claims against these defendants are also dismissed.

### 3. All BOP Members of the Counter Terrorism Unit, All Staff Members of the BOP Correctional Services Division, Barb Von Blanckensee, Kathy S. Hill, and N. Simpkins

Akers amended the caption of his Second Amended Complaint to add these defendants, but he makes no factual allegations against them anywhere in the substance of the Complaint, and he fails to attempt to identify which

individuals might be liable in the agencies he names. These claims are dismissed for failure to state a claim and for frivolousness.

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that Akers's Second Amended Complaint fails to state a claim on which relief may be granted, and therefore it will be dismissed. 28 U.S.C. § 1915A(b)(1). A district court should not dismiss a pro se complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). The Court determines that amendment would be futile.

Therefore, it is HEREBY ORDERED:

1.     Plaintiff's motion to amend (Doc. 11) is GRANTED. The Clerk of Court is directed to file the Amended Complaints. (Docs. 11-1 and Doc. 12.)

2.     This matter is DISMISSED. The Clerk of Court is directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.     All other pending motions are DENIED as moot.

4.     The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

5.      The Clerk of Court is directed to have the docket reflect that this

dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because the Complaint

fails to state a federal claim upon which relief may be granted.

DATED this 15th day of November, 2021.


_____

Brian Morris, Chief District Judge
United States District Court